



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE UNION CENTRAL LIFE INSURANCE COMPANY, ET AL | * | CIVIL ACTION |
| VERSUS | * | NO. 00-136 |
| CYRUS RATCLIFF, SR., ET AL | * | SECTION "F" |

ORDER AND REASONS

Before the Court are cross motions for summary judgment by the widow and the parents of Troy Ratcliff. For the reasons that follow, the motion filed by the widow is GRANTED and the motion filed by the parents is DENIED.

Background

This is a dispute over life insurance and accidental death benefits payable under a group policy obtained by Troy Anthony Ratcliff. Ratcliff was a deputy employed by the Assumption Parish Sheriff's Office. On June 5th, 1999, he was killed in the line of duty in an automobile accident in Assumption Parish. Ratcliff is survived by his wife Misty Dawn Kennerson Lodrigue Ratcliff (Mrs.

Ratcliff) and by his parents Cyrus Ratcliff, Jr. and Katherine D. Ratcliff (the parents) and his brothers and sisters.

The benefits at issue are worth $43,000 each. On September 8, 1999, the parents and Mrs. Ratcliff entered into a settlement whereby Mrs. Ratcliff would receive the life insurance proceeds left over after the payment of Troy Ratcliff's outstanding bills.[1] However, at that time of the settlement, the parties were unaware of the accidental death benefit and believed that the monies involved were only the $43,000 from the life insurance benefit. When the parents discovered that the total proceeds were actually $86,000, they refused to go through with the settlement and requested that Mrs. Ratcliff split the total benefits proceeds with them after the bills were paid. The insurance company filed a complaint in interpleader to determine how the proceeds should be paid because more than one party was claiming the proceeds.

In these motions, Mrs. Ratcliff and the parents each assert that they are entitled to some or all of the insurance money. The trial in this matter was set for September 25, 2000, but all parties agreed to have the case resolved on summary judgment motions because the pending issues are ones of law only.

---

[1] The bills included funeral expenses and the remainder of the loan on Ratcliff's truck that was registered in his father's name.

2

I.  <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio.</u>, 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  <u>See</u> <u>id</u>.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  <u>Id</u>. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  <u>See</u> <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress

his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II. Application

### A. The Settlement Agreement

The Court first addresses the validity of the settlement agreement between Mrs. Ratcliff and the parents. On September 8, 1999, Mrs. Ratcliff and the parents entered into an agreement by which Mrs. Ratcliff would receive the remainder of the life insurance proceeds after the funeral bills and decedent's truck loan were paid. Mrs. Ratcliff asserts that this agreement is binding on the parents because it was their intent that she receive any remaining insurance proceeds after the bills were paid. The Court does not agree and finds that the agreement is not valid because it was the product of error of fact. See Clover Contractors v. James H. Jones-1980, 453 So.2d 983 (La. App. 4th Cir. 1984), writ denied, 459 So.2d 540 (La. 1984) Carlton v. Great American Ins. Co., 273 So.2d 655 (La. App. 4th Cir. 1972), writ denied, 277 So.2d 442 (La.1973). See also LSA-C.C. Art. 3079. At the time the parties entered into the agreement, they believed that the amount of the insurance benefits was only $43,000. Because the

4

parties consented to the agreement based on a mistaken belief that the proceeds were only $43,000, the agreement is not valid or binding.

### B. The Insurance Benefits

Did Troy Ratcliff designate a beneficiary under the group policy? The parents assert they were the designated beneficiaries. In making this argument, they urge the Court to look beyond the terms of the insurance policy and to consider parole evidence, which they argue will establish that they were the intended beneficiaries. The Court declines to do this. Only when the agreement is unclear, ambiguous, or will lead to absurd consequences, will the Court look beyond the written agreement. Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087, 1089 (La. 1981); See Commercial Life Ins. Co. v Robinson, 662 So 2d 486, 488 (La. App. 5 Cir 1995).

In this case, the group policy at issue, which covers both the life and accidental death benefits, provides:

> "If at the death of the Certificateholder no beneficiary was named, or if no beneficiary survives the Certificateholder, the amount of insurance will be paid, in a single sum, to his spouse, if living..."

This provision could not be clearer: If there is no designated beneficiary, the surviving spouse receives the insurance proceeds. The Court has no need to look at evidence outside the document to

5

determine its meaning.[2]  Thus, the Court finds that the proceeds of the policies should be paid to Misty Ratcliff, as the surviving spouse of Troy Ratcliff.[3]

Accordingly, the motion for summary judgment by Misty Ratcliff is GRANTED.  The motion for summary judgment by the parents of Troy Ratcliff is DENIED.

New Orleans, Louisiana, September 28, 2000.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[2] Although the Court declines to look at parole evidence in this case, it notes that the administrator for the Sheriff's Office, Jennifer Dolese Falterman, testifies that Troy Ratcliff wanted to change the policy to make his wife the beneficiary.  However she did not know the identity of any original beneficiaries because there is no record of the form designating an original beneficiary.  The Court also notes that there is no record of a change of beneficiary form which Troy Ratcliff had requested.

[3] In the parents' opposition to Mrs. Ratcliff's memorandum, they concede that without a named beneficiary, the "facility of payment" clause, naming the surviving spouse as the beneficiary, would control.